UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-CV-81551-RLR

CHRISTOPHER CONNELLY,

    Plaintiffs,

v.

ZACHARY HALL, et al.,

    Defendants.

_____/

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND CLOSING CASE**

**THIS MATTER** is before the Court on Defendants' Motion to Dismiss [DE 29] Plaintiff's Complaint [DE 1]. The Motion is fully briefed. The Court has reviewed the Motion, Plaintiff's Opposition [DE 31], Defendant's Reply [DE 32], and the record and is otherwise fully advised in the premises. For the reasons discussed below, the Motion to Dismiss is **GRANTED**.

## I.  BACKGROUND

Plaintiff, Christopher Connelly, initiated this suit on December 16, 2024. DE 1. He alleged violations of his Fourth Amendment right to be free from excessive force and unlawful detention under 42 U.S.C. § 1983. *Id.* at ¶¶ 30–45. The facts as set forth in the complaint are as follows.

On February 13, 2024, shortly after midnight, four Palm Beach County Deputy Sheriffs responded to a domestic disturbance in Lake Worth, Florida. *Id.* at ¶¶ 15–16. The responding officers were Deputy Sheriffs Zachary Hall, Christopher Byrne, Vinroy Hylton, and Shawn Skinner. When Plaintiff encountered the deputies, he spoke with them and answered their questions. Eventually, the deputies "surrounded" Plaintiff which caused him to feel "he was in

danger and attempt[] to flee." *Id.* ¶¶ 16–19.  He was then tackled to the ground by Deputy Hall. *Id.* ¶ 20.  Deputies Byrne and Hylton also positioned themselves on top of Mr. Connelly to subdue him. *Id.*  As Plaintiff was on the ground, with the three deputies on top of him, Deputy Hall punched Plaintiff several times on the head and face area. *Id.* ¶ 21.  Then, Plaintiff was arrested. *Id.* ¶ 24.

A review of the deputies' body-worn camera footage reveals additional information about this encounter.[1]  The footage captures Plaintiff disregarding multiple orders by the deputies to leave the scene of the domestic disturbance or to sit down and remain in one spot. *See generally* D/S Hylton BWC.  And, while investigating the disturbance, Plaintiff's then-girlfriend told the officers that Plaintiff was possibly under the influence of alcohol or drugs—potentially including crack cocaine. D/S Hylton BWC 7:44–7:52.  As Plaintiff continued to evade the deputies by walking away and calling out to his then-girlfriend, three of the deputies approached him all at once. D/S Hylton BWC 14:13–14:22.  Deputy Hylton explained to Plaintiff that he could no longer leave and that a medic was on the way to "check [him] out because something [was] wrong with [him]." *Id.* 14:27–14:33.  Then, Plaintiff rushed Deputy Skinner, pushed him in the chest, and fled from the deputies. *Id.* 14:33–14:46.  While the deputies chased after Plaintiff, Deputy Skinner fell

---

[1] Plaintiff attached screenshot images from the body-worn camera footage to the complaint. DE 1 ¶¶ 17, 26.  Plaintiff also included screenshots of footage captured through a cellphone camera by a bystander at the scene of the events. *Id.* at ¶ 23.  The footage was conventionally filed concurrently with Defendants' motion to dismiss. *See* DE 30.  Thus, because Plaintiff refers to the footage in his complaint, the depiction of the events is central to his claim, and the authenticity of the videos are undisputed, the footage is incorporated into the complaint by reference. *Baker v. City of Madison, Alabama*, 67 F.4th 1268, 1276–77 (11th Cir. 2023); *see also Johnson v. City of Atlanta*, 107 F.4th 1292, 1299–1300 (11th Cir. 2024) (noting the district court properly considered body camera footage because the video was central to the plaintiff's claims and the video's authenticity was not challenged).  Additionally, Plaintiff refers to the footage in his opposition and does not oppose the incorporation of the video footage. DE 31 at 2, 8.  Accordingly, the Court can review the footage in ruling on the motion. *Baker*, 67 F.4th at 1277; *Johnson*, 107 F.4th at 1301.

to the ground. *Id.* 14:33–14:39.  Plaintiff ran several yards away from the deputies until he was tackled by Deputy Hall with Plaintiff's back on the ground. *Id.* 14:33–14:41.  Deputy Hall and Skinner positioned themselves on top of him. *Id.* 14:41–14:45.  The two of them grappled with Plaintiff, trying to pin his shoulders down. D/S Skinner BWC 12:34–12:40.  During the struggle, Deputy Hall punched Plaintiff with his right hand using a closed fist, striking him on the side of his head. *Id.* 12:39–12:42; Bystander Video 00:00–00:02.  Deputy Hall immediately punched him again with his left fist, hitting him on the head again. Bystander Video 00:02–00:03.  He immediately threw a third punch at Plaintiff but missed as Plaintiff freed his left shoulder from Deputy Skinner's grasp and dodged the punch while trying to sit up. *Id.* 00:03–00:04.  Deputies Hylton and Byrne joined to help control Plaintiff because neither Deputy Hall nor Skinner were able to subdue him. *Id.* 00:04–00:08.  Deputy Hall forced Plaintiff back down to the ground and struck another blow to Plaintiff's ear and forced his elbow into Plaintiff's face in an attempt to keep him on the ground. *Id.* 00:04–00:10.  The four deputies continued to try and pin Plaintiff down, but struggled to do so. *Id.*  That is when Deputy Hall elbowed Plaintiff in his face, again. *Id.* 00:09–00:13.

Then, when Deputy Hall grabbed Plaintiff's arm to control him and turn him onto his stomach, Plaintiff stated, "I'm done.  You don't have to keep punching me in the . . . face." *Id.* 00:10–00:18.  Despite this statement, Deputies Skinner and Hall still struggled to turn Plaintiff. *See generally id.*  Instead, Plaintiff was trying to keep his back to the ground.  Plaintiff then stuck one elbow into the ground and tried to lift his body up. *Id.* 00:20–00:25.  As the deputies were finally starting to turn Plaintiff onto his stomach, while Plaintiff was on his side seeming to raise himself off the ground, Deputy Hall punched Plaintiff on the head again. *Id.* 00:25–00:27.  Plaintiff was then turned onto his stomach after three of the deputies put their body weight on top of him.

3

*Id.* 00:25–00:31. One of the deputies directed Plaintiff to "Give us your hands" as they tried to handcuff him. *Id.* 00:31–00:35. Plaintiff responded, "I will." *Id.* Still, Plaintiff pushed himself slightly off the ground and the three deputies, who weighed him down with their bodies, struggled to maintain control over Plaintiff. *Id.* 00:35–00:38. The deputies again yelled "Give us your hands" three more times. *Id.* 00:35–00:49. But, still, they struggled to bring Plaintiff's hands behind his back to handcuff him. *Id.* 00:35–00:59. As they brought Plaintiff's hands close enough together, Deputy Byrne lifted himself off Plaintiff's back and Plaintiff again tried to lift himself off the ground. *Id.* 1:00–1:04. Deputy Byrne forced him back down to the ground and the other deputies were able to handcuff him. *Id.* 1:04–1:18. No additional force was used after he was handcuffed.

Plaintiff suffered injuries to his knee, shoulder, head, brain and face. DE 31 at 2. As a result, he instituted this suit against Deputies Hall, Byrne, and Hylton in their individual capacities. Deputy Skinner is not a named Defendant. The complaint alleges that the deputies' conduct violated Plaintiff's Fourth Amendment right to be free from excessive force and unlawful arrest. Defendants Hall, Byrne, and Hylton responded with this motion to dismiss the complaint for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). DE 29.

In his opposition to the motion, Plaintiff states that he does not oppose Defendants' motion to dismiss the unlawful arrest claim. DE 31 at 1 n.1, 17 n.2. Accordingly, Defendants' motion to dismiss is **GRANTED** as to that claim. What remains for the Court's consideration, then, is Plaintiff's excessive force claim.

## II. LEGAL STANDARD

When deciding a motion to dismiss under Rule 12(b)(6), the Court must accept Plaintiff's factual allegations as true and draw inferences from the complaint in the light most favorable to

Plaintiff. *Ashcroft v. Iqbal*, 556 U.S. 662, 696 (2009). Still, Plaintiff is obligated to provide grounds for his entitlement to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561–63 (2007). This means that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002) (citing *S. Fla. Water Mgmt. Dist. v. Montalvo*, 84 F.3d 402, 406 (11th Cir. 1996)).

Here, the parties agree that in addition to the allegations described in the complaint, the Defendants' body-worn camera footage and the video captured through the bystander's cellphone are properly considered by the Court without treating the motion as a motion for summary judgment. DE 29 at 10; DE 31 at 6–7. When evaluating the contents of the video, the Court must do so in the light most favorable to the plaintiff. *Baker v. City of Madison, Alabama*, 67 F.4th 1268, 1277 (11th Cir. 2023). But "where a video is clear and obviously contradicts the plaintiff's alleged facts," the Court must "accept the video's depiction instead of the complaint's account, *see Pourmoghani-Esfahani v. Gee*, 625 F.3d 1313, 1315 (11th Cir. 2010), and view the facts in the light depicted by the video, *see Scott v. Harris*, 550 U.S. 372, 381 (2007)." *Baker*, 67 F.4th at 1277.

### III. ANALYSIS

Plaintiff alleges that Defendant Hall repeatedly punched him in the face while Defendants Byrne and Hylton pinned down Plaintiff's legs and torso and Deputy Skinner held down Plaintiff's right arm. DE 31 at 4. According to Plaintiff, doing so while he allegedly was restrained, stopped resisting, and verbally surrendered was an excessive use of force in violation of the Fourth Amendment. *Id.* at 2. In response, Defendants argue that they are entitled to qualified immunity since the force used to subdue Plaintiff was not excessive and, therefore, did not violate a

constitutional right. DE 29 at 9–12.  More specifically, Defendants argue that the complaint fails to plead sufficient facts that would overcome qualified immunity because the body-worn camera footage "clearly and obviously contradicts" Plaintiff's allegations. *Id.*  Thus, according to Defendants, the complaint must be dismissed.

Qualified immunity shields "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Although the defense of qualified immunity is usually raised at the summary judgment stage, it may be raised and considered on a motion to dismiss. *Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019).  Once qualified immunity is raised by a defendant, and it is established that the government official was acting within his/her discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate. *Baker*, 67 F.4th at 1278.  Then, the scope of the inquiry is limited to whether (1) the defendant violated a constitutional right, and (2) whether the violated right was clearly established. *Id.*  Here, Plaintiff does not dispute that Defendants "acted within the course and scope of their employment." DE 1 ¶ 12.  Thus, the first question is whether Defendants violated a constitutional right.

Plaintiff claims that the Defendants used excessive force in violation of the Fourth Amendment because Defendant Hall "unleashed a fury of closed fist punches to the head and face of [Plaintiff] while he lay restrained on the ground" and "Defendants Christopher Byrne and Vinroy Hylton joined in the attack as [Plaintiff] lay defenseless on the ground." DE 1 at ¶¶ 1–2. He further alleges that the "attack on the unarmed [Plaintiff] was the unwarranted violent conclusion to the deputies' response to a simple non-violent disturbing the peace call." *Id.* at ¶ 3. Defendants counter that the body-worn camera footage establishes a different series of events.

DE 29 at 10–11. They suggest that the footage shows Plaintiff's disobedience, evasion and resistance to the deputies' repeated orders and control once he was tackled to the ground. *Id.* And because Plaintiff resisted the deputies' control, Defendants argue that their use of force was justified and not a constitutional violation. *Id.*

1. **Fourth Amendment Principles.**

The Fourth Amendment provides a "right of the people to be secure in their persons, . . . against unreasonable . . . seizures." U.S. Const. amend. IV. This right "encompasses the right to be free from excessive force during the course of a criminal apprehension." *Mobley v. Palm Beach County Sheriff Dept.*, 783 F.3d 1247, 1353 (11th Cir. 2015). Still, making an arrest "necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id.* (citing *Graham v. Connor*, 490 U.S. 368, 396 (1989)). Thus, an officer's use of force is judged "on a case-by-case basis from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Johnson v. City of Miami Beach*, 18 F.4th 1267, 1272 (11th Cir. 2021). Although the question is "whether a reasonable officer would believe that this level of force is necessary in the situation at hand," a court must still balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interest at stake." *Graham*, 490 U.S. at 396 (internal quotation marks omitted).

Reasonableness is a fact-intensive analysis that examines the totality of the circumstances. *Baker*, 67 F.4th at 1279. The analysis should consider "the severity of the crime at issue, whether the suspect pose[d] an immediate threat to the safety of the officers or others, and whether [the suspect] [] actively resist[ed] arrest or attempt[ed] to evade arrest by flight." *Graham*, 490 U.S. at 396. These factors "serve only as a guide, and it is not necessary in all cases for an officer to show that all three factors weigh in his or her favor to establish that the force ultimately used was

7

reasonably proportionate to the need for force." *Varnadore v. Merritt*, 778 F. App'x 808, 813–14 (11th Cir. 2019). Additional considerations include "the need for application of force, the relationship between the need and amount of force used, and the extent of the injury inflicted by the arresting officer." *Helm v. Rainbow City, Alabama*, 989 F.3d 1265, 1273 (11th Cir. 2021). However, because determining reasonableness "is an objective test, [the Court] do[es] not consider an officer's intent or motivation." *Id.* Even still, reasonableness should "embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396–97.

**2.    Defendants' use of force did not violate a constitutional right.**

The core of Plaintiff's claim is grounded in the third factor. Specifically, he argues that "[a]lthough a suspect's resistance or attempt to evade arrest may justify an officer's use of force to gain control of the suspect, previous resistance or evasion does not justify additional force once the suspect has been brough under control and has stopped resisting." DE 31 10–12. Defendants agree: "[t]he law is clear that an officer may not use gratuitous force on a compliant, already handcuffed individual." DE 29 at 8. Both parties cite to several cases holding as much. *See e.g., Saunders v. Duke*, 766 F.3d 1262, 1265 (11th Cir. 2014) ("We have repeatedly ruled that a police officer violates the Fourth Amendment, and is denied qualified immunity, if he or she uses gratuitous and excessive force against a suspect who is under control, not resisting, and obeying commands."); *Hadley v. Gutierrez*, 526 F.3d 1324, 1330 (11th Cir. 2008) (holding that "a handcuffed, non-resisting [suspect's] right to be free from excessive force was clearly established [by] February 2002.").

Accordingly, Plaintiff likens his case to that of *Acosta v. Miami-Dade County*, 97 F.4th 1233 (11th Cir. 2024), and *Smith v. Mattox*, 127 F.3d 1416 (11th Cir. 1997). In *Acosta*, the officers responded to a domestic dispute after being apprised that the suspect might be high on drugs. 97 F.4th at 1236–37. When the officers arrived, they had a "tumultuous verbal exchange" outside the suspect's apartment until the he slammed the front door and fled out the back. *Id.* at 1237. The officers chased the suspect for some time and yelled at him to stop. *Id.* As the officers neared the suspect, they tried to arrest him, but he fought them off using his elbows and knocked an officer down. *Id.* Then, one of the officers tased the suspect, which subdued him, and another held him in a chokehold. *Id.* Even after the suspect stopped resisting, the officers continued to tase him and kicked him. *Id.* The Eleventh Circuit held that the officers used excessive force when they tased and kicked a suspect while he was "subdued, on the ground, and no longer resisting arrest." *Id.* at 1239–40.

Similarly, Plaintiff points to *Mattox*. There the suspect raised a bat to the officer in a threatening position then fled when the officer drew his gun. *Mattox*, 127 F.3d at 1417–18. As the officer caught up to him, the suspect attempted to flee again, but "docilely submitted to arrest upon [the officer's] request for him to 'get down.'" *Id.* at 1418. After the suspect submitted to the arrest, the officer put his knee on the suspect's back, handcuffed him, and, while repositioning the suspect's arm, the officer broke it. *Id.* The Eleventh Circuit noted that "this [was] a very close case" but that the officer was not entitled to qualified immunity at summary judgment "assuming . . . that Smith was offering no resistance *at all*." *Id.* at 1419–20 (emphasis in original).

Plaintiff argues that Defendants must have used excessive force, as the officers in *Acosta* and *Mattox* did, because those suspects fled, threatened or knocked over an officer, and then submitted to arrest while the officers continued their use of force. He argues that those are the

9

same facts as in this case. However, the material distinction here is that the video footage explicitly contradicts Plaintiff's allegations that he was subdued. Instead, the videos show that Plaintiff grappled with Deputies Hall and Skinner as they tried to position themselves on top of him. It was during this struggle that Deputy Hall punched Plaintiff in the face the first two times. Then, as Deputy Hall tried to strike him again, Plaintiff sat himself up from the ground, freeing himself from Deputy Skinner's grasp, and dodged the third punch. Deputies Hylton and Byrne had to join in to help control Plaintiff because Deputies Hall and Skinner could not do it themselves. As all four deputies struggled to keep Plaintiff on the ground, Deputy Hall struck Plaintiff again, this time with his elbow. Finally, Plaintiff offered to surrender, but he did so in words only. After saying "I'm done," Plaintiff still resisted the deputies as they tried to turn him over to handcuff him. When the deputies ordered Plaintiff to give them his hands, he said "I will," but the video shows him resisting their attempt to bring his hands together. Even with the weight of four deputies on his back, Plaintiff was still able to lift himself off the ground until Deputy Hall forced him down again.

In other words, whereas the suspect in *Acosta* was described as having docilely submitted to the arrest, and the suspect in *Mattox* was assumed not to have resisted *at all*, the same cannot be said about Plaintiff here. The video footage is clear and obviously contradicts the allegation that Plaintiff was under the deputies' control or stopped resisting when Defendants used force to subdue him. And, in such instances, Eleventh Circuit case law demonstrates that an officer may lawfully use force against a suspect who neither submits nor ceases to resist arrest. *See, e.g.*, *Hoyt v. Cooks*, 672 F.3d 972, 975, 980 (11th Cir. 2012) (holding that officers were entitled to qualified immunity where the suspect "resisted the entire time [the officers] tried to handcuff him[,] . . . . spread his arms apart to prevent being handcuffed, and . . . rolled around to keep his arms from

10

being pulled behind his back"); *Barnett v. City of Florence, Alabama*, 409 Fed. App'x 266, 271 (11th Cir. 2010) (affirming grant of qualified immunity where "the use of force [] occurred during a continual physical struggle"). Accordingly, the third factor in the reasonableness analysis weighs against Plaintiff.

Moreover, the other considerations do not outweigh the third consideration, that the suspect actively resisted or attempted to evade the arrest by flight. As for the first consideration—the severity of the crime—Plaintiff argues that he was merely suspected of disturbing the peace, which is a nonviolent crime. DE 31 at 910. This crime, according to Plaintiff, does not warrant the force used against him by Defendants and should, thus, weigh in his favor. Defendants point out, however, that Plaintiff pushed Deputy Skinner as he fled from Defendants and that he was arrested for Battery on a Law Enforcement Officer, a third-degree felony, and Resisting Arrest. DE 32 at 5; D/S Hylton BWC 14:33–14:46; *see also* Fla. Stat. § 784.07(2)(b). Notably, no force was used on Plaintiff until he pushed Deputy Skinner and fled from Defendants. This factor weighs in favor of Defendants.

The second consideration is whether Plaintiff posed an immediate threat to the safety of the officers or others. Plaintiff suggests that though he may have posed some threat before he was tackled, he posed no immediate threat after the four deputies pinned his arms, legs, and torso to the ground. In *Acosta*, the Eleventh Circuit applied similar reasoning in that, though the suspect posed some threat early in the encounter, he posed no threat to the officers when they began their use of force. 97 F.4th at 1240. However, the *Acosta* suspect "had been taken to the ground and subdued and was no longer resisting." *Id.* Here, Defendants suspected that Plaintiff was under the influence of drugs or alcohol, D/S Hylton BWC 7:44–7:52, and continued to resist the deputies' arrest, including freeing himself from the deputies' grip and lifting his body off the ground as they

11

tried to arrest him. His attempts to escape indicate a continued threat such that a reasonable officer would have thought continued use of force was necessary. Importantly, the deputies stopped using force when they determined Plaintiff was no longer a threat to the deputies or others—after Plaintiff was finally handcuffed. Therefore, on balance, this factor also weighs in Defendants' favor.

The need for force and the relationship between the need and the amount of force used weigh in Defendants' favor as well. Specifically, the fact that Plaintiff fled and was thought to be on drugs at the time compounds the need for the application of force. And Plaintiff's continued resistance and struggle during the incident increases the proportional relationship between the need and amount of force used. Thus, these factors also weigh in favor of Defendants. And although the Court is sympathetic to Plaintiff given the injuries he sustained, which appear to be substantial, they do not outweigh the other factors.

Given that these considerations generally weigh in Defendants' favor, the Court concludes that, based on the totality of the circumstances, the force used was reasonable and not excessive. Unlike the description of the events from Plaintiff's complaint, the body-worn camera footage clearly contradicts the suggestion that Plaintiff was restrained or subdued when Deputy Hall tackled him and punched him several times. Instead, the footage shows that Plaintiff's resistance required the officers to use force to effectuate the arrest of a suspect who fled after repeatedly ignoring their commands. The force used was adequate to address the severity of the crime at the time, impede any threat from Plaintiff, and subdue him as he was fleeing and resisting the arrest. Meaning, a reasonable officer would believe the amount of force used was necessary in this particular situation. *Graham*, 490 U.S. at 396–97.

Even when viewing the footage and alleged facts in the light most favorable to Plaintiff, the complaint does not plausibly allege a constitutional violation.  Therefore, Defendants are entitled to qualified immunity and the Court need not address whether the law was clearly established.

### IV.  CONCLUSION

Based on the foregoing, Defendants' Motion to Dismiss [DE 29] is **GRANTED**.  It is **ORDERED AND ADJUDGED** that Plaintiff's claims in the Complaint are dismissed for the reasons set forth in this Order.  Because the content of the video footage renders further amendment futile, the Court's dismissal is without leave to amend.  All pending deadlines are **TERMINATED** and all pending motions are **DENIED AS MOOT**.  The Clerk of Court shall **CLOSE** this case.

**DONE AND ORDERED** in Chambers, West Palm Beach, Florida, this 15th day of April, 2025.

_____
ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE